SAMUEL, Judge.
This is a suit for damages and for an injunction. Plaintiff is a corporation engaged in the business of selling lumber, building materials and similar products at both wholesale and retail. The defendant corporation operates a ready-mix concrete plant on the property adjoining plaintiff’s. In pertinent part the petition, which was filed on December 21, 1967, alleges defendant’s activities have caused and are causing the emission of cement and other dust in such quantities as to make impossible the conduct of plaintiff’s business and have resulted in the damages sought.
The petition prays for a preliminary injunction (no temporary restraining order was sought) enjoining the defendant, its officers, agents, etc. from “allowing the *722 emission of cement dust from defendant’s ready-mix plant onto petitioner’s building, machinery, vehicles, inventory and equipment and from allowing the operation of defendant’s ready-mix concrete trucks and material handling trucks in such a way as to cause damage to petitioner’s property and business;” and, in due course, for a permanent injunction to the same effect and for damages.
Trial of the- rule for a preliminary injunction was held on January 17 and 18, 1968. After trial there was judgment granting a preliminary injunction as prayed. However, in his written reasons for judgment the trial judge limited the injunction to “escaping cement during the process of loading the hoppers and the trucks” and granted the defendant this suspensive appeal from the judgment. The question of damages has not been tried and the only issue involved in this appeal is whether the trial court was correct in granting the preliminary injunction.
In this court the defendant contends: (1) the matters complained of by the plaintiff did not exist at the time of trial; (2) a preliminary injunction should only be utilized to preserve the existing status of the parties pending a hearing on the merits and the granting of a preliminary injunction in this case alters that status; and (3) plaintiff has failed to make a prima facie showing that, in the absence of the granting of an injunction, it would suffer irreparable damage. In addition, the defendant has filed a motion in this court which will be explained and discussed later in this opinion.
The record contains the testimony of nine witnesses, five called by the plaintiff and four by the defendant. Plaintiff’s witnesses consisted of two of its officers, two former employees and a real estate agent who had attempted to sell the plaintiff property over a period of time. Defendant’s witnesses were two of its officers, an officer of a corporation selling concrete and construction equipment and a photographer who identified pictures taken by him and offered into evidence.
The record reveals that the plaintiff’s place of business is located on its own property on the Airline Highway in the Parish of Jefferson where it began its operation in 1957. The defendant corporation began its operation on the property adjoining plaintiff’s in 1963. Both properties are in an area zoned for commercial use. Insofar as is most pertinent here, defendant’s plant and equipment are composed of a paved storage yard, a hopper for sand and gravel which is loaded from the top, a storage silo for dry cement, a conveyor system for aggregate materials and a batching apparatus from which measured amounts of cement, aggregate material and water are delivered into cement mixing trucks. There are other facilities, such as an office building, warehouse, a maintenance shop, etc. The dry cement utilized by the defendant is delivered in enclosed bulk transport trucks and is pumped by air pressure out of the trucks into the dry cement storage silo through a system of enclosed pipes. In its regular operation, after the mixture of dry cement, aggregate material and water is automatically measured, it is delivered into cement mixer trucks through a weight batcher at the bottom of the silo. Defendant’s business at the location in question has increased substantially since its inception in 1963. At the time of trial an average of nine or ten bulk trucks of cement were being delivered to the plant each working (good weather) day, about 140 ready-mix truck loads were delivered to various jobs on such a day, and approximately 600 to 800 truck loads of sand and gravel were delivered to the plant each month.
Testimony adduced on behalf of the plaintiff is to the effect that because of the excessive emission of cement and other dust from the defendant plant and as a result of that plant’s operation, damage was caused to the building supplies and materials sold by the plaintiff and to the *723 equipment and machinery used in the defendant’s business; in particular, the cement dust did so much damage to the wood products, the principal articles sold by the plaintiff, that those products, as well as others, in their buildings and in their yard became unsaleable. These witnesses also testified that the dust was in such excessive quantities as to make it impossible to keep the plaintiff place of business free thereof, that in any event the cement dust could not be removed without damaging the products sold by the plaintiff and that, although the defendant had recently made some attempts to mitigate the amount of the dust emitted from its plant, such dust continued to be emitted to an extent which prevented the operation of the plaintiff business.
The defense testimony generally is to the effect that, although cement and other dust was formerly emitted from the defendant’s plant, the situation was largely corrected by the installation of a dust collector or filter system, put into operation on top of the hoppers within the year prior to trial, which prevents approximately 80% of the cement dust formerly emitted from getting into the air, and by the installation of an instrument on the silo which indicates when the material gets to a particular level so that overflowing, formerly a cause of dust emission, can now be prevented.
Appellant’s first contention, that the matters complained of by the plaintiff did not exist at the time of trial, is not well founded. This is a factual issue, the trial court found as a fact that at the time of trial appellant’s operations continued to emit dust in sufficient quantities so as to constitute a nuisance, and we agree with that finding. Under LSA-C.C. Art. 667, while a proprietor may do with his estate whatever he pleases, he cannot use his property in a manner which may deprive his neighbor of the liberty of enjoying his own or which may be the cause of damage to that neighbor.
We are also of the opinion that appellant’s second contention, that a preliminary injunction should only be utilized to preserve the existing status of the parties pending a hearing on the merits, also is not well founded. The rule has no application where a continuing nuisance is involved; the very purpose of an injunction in nuisance cases is to change the existing status by bringing the nuisance to an end.
Appellant’s third contention (plaintiff has failed to make a prima facie showing that, in the absence of the granting of an injunction, it would suffer irreparable damage) also must be rejected. This court recently answered the same contention in City of New Orleans v. Degelos Bros. Grain Corp., 175 So.2d 351, 354, a case involving a nuisance resulting from obnoxious and nauseous odors, as follows:
“* * * However, in addition thereto defendant-appellant contends that the Trial Court erred in granting an injunction where, as it contends, there is no evidence of any present or threatened irreparable injury, loss or damage and where there exists an adequate remedy at law available in a suit for damages by any individual in a position to prove injury. The short answer to that contention is that the neighbors are being subjected to serious discomfort and inconvenience, as found by the Trial Court, and since the odor complained of is continuing and recurring any remedy afforded at law would be inadequate. See McGee v. Yazoo & M.V.R. Co., 206 La. 121, 19 So.2d 21, 23.”
The motion to which we have referred earlier in this opinion was filed by the appellant more than a month prior to the hearing on the merits of the appeal. It seeks a dissolution of the preliminary injunction because of plaintiff’s failure to furnish the security required by the trial court judgment and, alternatively, a remand of the case to the lower court for further evidence. Also prior to the hearing on *724 the merits of the appeal, the motion was considered and denied by another panel of this court on briefs filed by both litigants in which the same contentions were urged and opposed. Aside from the question of the propriety of our reconsidering the action already taken by another panel, we are in agreement with the dismissal of the motion.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.